IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JACKIE and BRITNEY IRVING,

     Plaintiffs,

v.                                CASE NO.:  6:20-cv-1889-Orl-40EJK

USAA GENERAL INDEMNITY
COMPANY,

     Defendant.

_____/

## DEFENDANT USAA GENERAL INDEMNITY COMPANY'S TIME SENSITIVE MOTION FOR STAY OF PROCEEDINGS

     Defendant/Counter-Plaintiff, USAA General Indemnity Company (hereinafter "USAA"), by and through its undersigned counsel and pursuant to Rule 7(b) of the Federal Rules of Civil Procedure, Local Rule 3.01, and the Court's inherent power and discretion to stay proceedings as an incident to its power to control its docket, hereby moves this Court for an immediate stay of this matter until Brighthouse/Spectrum/Charter provides its response to a Subpoena issued by USAA on February 4, 2021, and the Court then has time to address the Plaintiffs' fabrication of evidence and resulting fraud on the Court. This Motion for a temporary stay is based on the fact recent discovery demonstrates Plaintiffs' claims against USAA are completely fraudulent and involve acts of arson and insurance fraud.  Plaintiffs' counsel has, however, refused to dismiss the action, insisting he receive more proof of the fraud by his clients. Because

Brighthouse/Spectrum/Charter's response to the Subpoena will unequivocally prove Plaintiffs' claims are fraudulent, USAA requests this Court's entry of a temporary stay in this matter until said response is received. Presuming Brighthouse/Spectrum/Charter's response to the Subpoena shows what USAA expects it to show, USAA anticipates Plaintiffs will dismiss this matter due to its fraudulent nature.  In further support of this Motion, USAA states as follows:

## **BACKGROUND**

USAA issued Plaintiffs Jackie and Britney Irving an automobile insurance policy and a homeowners insurance policy.  On October 20, 2019, there was a fire at the Irvings' home. The fire originated in the compartment of the Irvings' car, which was parked in their home garage. The fire totaled the car and caused significant smoke damage to the home.  The Irvings presented a claim under their USAA policies as a result of this fire.  USAA ultimately denied coverage, and the Irvings brought this suit seeking benefits under the USAA policy.

During the investigation of the claim, the Irvings gave several statements and submitted to examinations under oath.  In their testimony, the Irvings claim the fire was started in the car in their garage by stalkers/unknown individuals who had been stalking and harassing the Irvings since 2013.  (See Attachment "A", page 4; See Attachment "B", page 22; See Attachment "C", page 14; See Attachment "D", page 30; See Attachment "E", page 21).  The Irvings assert over the years the stalkers had repeatedly sent them harassing texts from multiple phone numbers.  (See Attachment "B", page 17; See Attachment "C", pages 14-17; See Attachment "E", page 22).  The Irvings reported the

stalking incidents multiple times to police authorities. (See Attachment "C", page 16; See Attachment "D", pages 31, 39-40; See Attachment "E", pages 28-29).  The Irvings claim the police could not identify the stalkers. (See Attachment "E", pages 29-31).

On the day of the fire, Mr. Irving had gone fishing with the Irvings' children, and Mrs. Irving was alone at the house. (See Attachment "B", page 26; See Attachment "E", page 58).   That afternoon before the fire started, Mr. Irving started receiving text messages from the alleged stalkers, which texts indicated something bad was about to happen. (See Attachment "B", page 19; See Attachment "C", page 19; See Attachment "E", pages 64-65).  Mrs. Irving testified she got up from her bedroom where she had been playing on her phone, and went to fold some laundry. (See Attachment "B", page 27; See Attachment "D", page 7, 17).  She smelled a fire. (See Attachment "A", page 6; See Attachment "B", page 28; See Attachment "D", page 7, 19).  She disabled the home alarm system which had been set.  (See Attachment "A", page 6; See Attachment "B", page 28; See Attachment "D", page 7, 20).  She then looked in the garage. (See Attachment "A", page 8; See Attachment "B", page 29; See Attachment D, pages 7, 20).  She saw the fire in the vehicle. (See Attachment "A", page 9; See Attachment "D", page 9).  She left the house and called her husband and the authorities at approximately 6:08 p.m. (See Attachment "B", pages 29, 37; See Attachment "C", page 19; See Attachment "D", pages 7-8).  The authorities arrived and extinguished the fire.  While they were outside discussing the fire, Mrs. Irving returned into the home allegedly to use the restroom and left her phone behind. (See Attachment "B", page 38; See Attachment "C", pages 19-20; See Attachment "D", pages 13-14).  While she was gone, she and her

husband started receiving text messages from the alleged stalker taking responsibility for the fire and describing exactly how it had happened. (See Attachment "B", page 38; See Attachment "C", page 20; See Attachment "D", page 14; See Attachment "E", pages 59-61).  The night before the fire occurred Mr. Irving had spent the night at his girlfriend's house. (See Attachment "E", pages 42, 49).

While the Irvings were staying in a hotel a couple of months later, Mrs. Irving reported she had again been contacted by the stalkers via text and they had gang raped her in her hotel room. (See Attachment "D", page 41, 43).  At the time, her husband was again with his girlfriend. (See Attachment "D", page 41-43).  Mrs. Irving reported the incident to the police. (See Attachment "D", page 41, 43, 47).

Suspicious about the claim unknown stalkers were responsible for the fire, USAA requested during its investigation that it be permitted to image the Irvings' cell phones so it could further investigate all the information on the phones and determine if the identity of the stalkers could be obtained.  (See Exhibit 2[1]).  The Irvings refused to allow their phones to be imaged.  After this litigation started, USAA again requested an imaging of both Mr. and Mrs. Irving's phones.  (See Exhibit 3).  So far, Plaintiffs' counsel has refused to allow the requested imaging.

During its investigation, USAA ascertained the phone numbers being used by the alleged stalkers.  Because USAA did not have subpoena power (no litigation was pending), USAA could not trace the stalkers' phone numbers to try to identify them. USAA advised the state arson investigator of the phone number which ultimately needed

---

[1] There is no Exhibit 1 to this motion.

to be traced to identify the stalkers.  (See Exhibit 4).  However, the arson investigator never followed up on this request.  Thus, as of the time Plaintiffs filed suit, no tracing of the phone number utilized by the alleged stalkers on the date of the fire had been performed.

## RECENT DEVELOPMENTS SHOWING MRS. IRVING IS THE STALKER AND THIS CASE IS A FRAUD

The alleged stalkers used a process known as "spoofing" to attempt to hide the ultimate number they were using to send the stalking text messages.  Spoofing is a process which makes the receiver of a text or phone call believe the number is a certain number (like a local telephone number) when the spoofer is really making contact from a different telephone number.  During its investigation, USAA was able to determine the stalkers were ultimately sending the text messages through phone number 1-863-662-6506 on the date of the fire. (See Exhibit 4).

Once this litigation was filed, after sending a couple of subpoenas and tracing the provider of the above-referenced telephone number, USAA's counsel ultimately determined this phone number was a "Pinger" phone number.  USAA's counsel subpoenaed Pinger and, on January 28, 2021, Pinger responded to the subpoena by providing information about the alleged stalkers' use of this telephone number.  Pinger provided documents, which among other things, revealed every time this phone number was utilized from October 20, 2019 to October 22, 2019 (from the date of the fire until two days after the fire).  (See Exhibit 5).  The Pinger records show that from 3:33 pm on the date of the fire until 4:10 pm (a couple of hours before Mrs. Irving discovered the fire), the stalker's phone number was being utilized to send communications through IP

address 72.189.25.253.  An IP address identifies the location from where the electronic message is being sent.  The production by Pinger also shows that, beginning at 6:41 pm on the date of the fire, which is the time the texts came from the stalkers taking responsibility for the fire and describing what happened, the same IP address of 72.189.25.253 was being utilized.  The times this IP address was being utilized correspond with the times Mrs. Irving was in her home before the fire, and again in her home after the fire.

USAA's computer system keeps a record of all the IP addresses from which contacts from its members/insureds originate.  USAA ran a check of its computer system and discovered the IP address being used by the stalkers on the date of the fire was identical to the IP address used multiple times by Mrs. Irving in contacts with USAA from March of 2019 through the day after the fire. (See Exhibit 6).  Further, the USAA data shows this IP number is tied into the internet provider Brighthouse/Spectrum/Charter. (See Exhibit 7).  The Irvings have made payments to Brighthouse/Spectrum/Charter as their WiFi provider.  (See Exhibit 7-a).  Thus, the bottom line is the evidence plainly shows the stalker sent the text messages relating to the fire through the Irvings' WiFi system located in their home both before and after the fire was started. The only person in the home before the fire started was Mrs. Irving.  After the fire, Mrs. Irving was in the home when the post-fire stalking messages were sent. Clearly, Mrs. Irving was sending the stalking messages.

Further, after this litigation was filed, USAA's counsel sent a public records request to Polk County where the Irvings lived when the alleged stalking allegedly began.

The Polk County Sheriff's Office responded by providing a police report showing that, in 2014, Mr. Irving reported he had been receiving harassing texts from stalkers.  The Polk County Sheriff's Office did not complete their investigation until 2018.  At that time, through traces and subpoenas, they determined harassing texts were coming through Pinger phone number 1-863-662-6784.  The Polk County Sheriff's Office found this Pinger number was owned by a person with the email address of [BritneyIrving23@gmail.com](mailto:BritneyIrving23@gmail.com).  Before being confronted by the Polk County Sheriff's Office, Mrs. Irving confirmed this email address was, in fact, her email address.  The Polk County Sheriff's Office confronted Mrs. Irving in 2018 as the stalker, but she denied and refused to cooperate.  Mr. Irving was told Mrs. Irving was the stalker, and he stated he did not want to do anything further since the stalker was his wife.  (See Exhibit 8).  In a subpoena recently issued after this police report was discovered, USAA confirmed the email address of [BritneyIrving23@gmail.com](mailto:BritneyIrving23@gmail.com) was using the phone number from which the harassing texts by the stalkers in 2014 were originating.  (See Exhibit 9).  The Polk County Sheriff's Office advised both Mr. and Mrs. Irving that Mrs. Irving was the stalker in 2018.  Thus, both the Irvings lied in their statements to USAA when they said no police department had ever figured out who the stalkers may be.

Additionally, after the instant litigation was filed, USAA's counsel sent a records request to the Lake Mary Police Department for information related to the alleged gang rape incident in February 2020.  A report from the Lake Mary Police Department shows the police told Mrs. Irving they needed to download the contents of her cell phone in order to investigate the source of the stalker's text messages.  According to the police

report, at this point Mrs. Irving's demeanor changed, and she became confrontational. While they were discussing the issue, Mrs. Irving began manipulating her phone, and it appeared she was deleting information therefrom. She refused to allow the Lake Mary Police Department to access her phone and then left.  Mr. Irving then advised the police the person sending the text messages knew intimate details of Mrs. Irving that only she would know.  (See Exhibit 10).

The evidence uncovered by USAA's counsel since this case was filed plainly shows the Irvings' claims against USAA are fraudulent, and Mrs. Irving has been sending the stalking text messages.  Accordingly, USAA's counsel sent a letter to Plaintiffs' counsel on February 2, 2021 advising him of these developments and requesting the case be dismissed and the depositions of the USAA representatives (who only know about USAA's investigation presuit) be canceled.  (See Exhibit 11).  To date, Plaintiffs' counsel has refused to dismiss the case and has, in fact, accused USAA of creating fraudulent and false information.

Because Plaintiffs' counsel has refused to dismiss the case and in order to absolutely prove Mrs. Irving is the alleged "stalker," on February 4, 2021 USAA issued a Subpoena to Brighthouse/Spectrum/Charter asking for the identity of the Irvings' IP address on their WiFi on the date of the fire. USAA's counsel has also repeatedly advised Plaintiffs' counsel he should be able to independently confirm the Irvings' home WiFi IP address by having the Irvings directly contact Brighthouse/Spectrum/Charter for this information. Apparently, he is refusing to do so. USAA's counsel has requested Plaintiffs' counsel stay activity in this case until this information is received from

Brighthouse/Spectrum/ Charter, but he has refused this request, thus necessitating this Motion.

## MEMORANDUM OF LAW

This case has reached a critical juncture.  It is USAA's position the written discovery conducted since this case was filed unambiguously shows Plaintiffs' claims against USAA are fraudulent, and Mrs. Irving is the person who sent all of the alleged stalking text messages.  Despite the evidence which has developed, Plaintiffs' counsel has so far refused to dismiss the action.  For the reasons outlined above, Brighthouse/Spectrum/Charter's response to the Subpoena issued to it by USAA on February 4, 2021 will provide the final dispositive evidence on the issue of whether the alleged "stalking" messages originated from Mrs. Irving through the Irvings' WiFi account.  While USAA is already 100% certain the IP address will be the same as the one used by the stalker on the day of the fire, in order to allay any concerns which may exist on this issue, USAA respectfully requests this Court to delay and stay all other activity in this case until this IP address information is confirmed by Brighthouse/Spectrum/Charter. Presumably, if the information received in response to the Subpoena confirms the stalking text messages were sent through Mrs. Irvings' WiFi at her home, Plaintiffs' counsel will dismiss this case.  Because the discovery cut-off is not until December 6, 2021, the entry of a temporary stay, until the response to the Subpoena is received within the next few weeks, will not affect the overall progress of the case.

Federal district courts have broad discretion to stay proceedings as an incident to their power to control their dockets. Clinton v. Jones, 520 U.S. 681, 706 (1997); Landis v. N. Am. Co., 299 U.S. 248, 254-255 (1936); Lacroix v. Lejeune Auto Wholesale, Inc., 2020 WL 6059765, *1 (S.D. Fla. Oct. 14, 2020); Ring v. City of Gulfport, 2020 WL 3895435, *2 (M.D. Fla. July 10, 2020); Belloso v. Asplundh Tree Expert Co., 2018 WL 4407088, *2 (M.D. Fla. Sept. 17, 2018); McCullough v. Royal Caribbean Cruises, Ltd., 2017 WL 6372619, *1 (S.D. Fla. Jan. 11, 2017); Mackiewicz v. Nationstar Mortgage, LLC, 2015 WL 11983233, *1 (M.D. Fla. Nov. 10, 2015). See also Rando v. Government Employees Insurance Company, 2006 WL 8439443, *1 (M.D. Fla. Dec. 4, 2006)("[A] court has broad inherent power to stay discovery until preliminary issues can be settled which may be dispositive of some important aspect of the case").

The party seeking a stay has the burden to show good cause for and reasonableness of the requested stay. Belloso, 2018 WL 4407088 at *2. Good cause exists for the entry of a stay order when resolution of a preliminary issue may dispose of the entire case and likely eliminate the need for other actions in the case. Lacroix, 2020 WL 6059765 at *2; Rando, 2006 WL 8439443 at *2. The Court may take a "preliminary peek" at the merits of the issue to determine whether it is truly dispositive. Belloso, 2018 WL 4407088 at *2.

In exercising its discretion, the Court may consider factors such as: "(1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and, (4) whether a stay will reduce the burden of

litigation on the parties and on the court." Ring, 2020 WL 3895435 at *2; Mackiewicz, 2015 WL 11983233 at *1. Even where there is not a dispositive pending motion before the Court, a stay may be appropriate upon the consideration of these factors. See Jones v. Fiorella Insurance Agency, Inc., 2020 WL 7485193, *2 (S.D. Fla. Nov. 30, 2020).

While a dispositive motion is not currently pending before the Court in this case, USAA respectfully submits the case law addressing discovery where a dispositive motion is pending is analogous to this situation, as Brighthouse/Spectrum/Charter's response to the outstanding Subpoena will likely be case dispositive. In Vargas v. Peltz, 901 F. Supp. 1572 (S.D. Fla. 1995), the defendant filed a motion to dismiss and for sanctions based on the plaintiff's fabrication of evidence, perjury, and obstruction of justice. The district court noted a plaintiff's "fraud on the court" justifies the imposition of the sanction of dismissal with prejudice. In doing so, the district court noted it had previously "stayed all substantive discovery pending resolution of the motions to dismiss and for sanctions for the very reason of determining if Plaintiff has abused the process of the Court which would subject her claims to dismissal." Id. at 1582. The district court noted the magistrate judge had previously granted the defendant's motion for a limited stay of discovery, restricting all discovery to only those issues relating to the pending motions to dismiss and for sanctions, and precluding any discovery relating to the merits of the case. Id. at n. 14.

In Chudasma v. Mazda Motor Corp., 123 F.3d 1353 (11th Cir. 1997), the Eleventh Circuit Court of Appeals broadly endorsed the use of discretionary stays pending the outcome of potentially dispositive issues because, in such cases, the parties'

continued engagement in the case, including discovery, imposes significant costs and burdens on the parties and courts and may eventually be entirely unnecessary:

> Allowing a case to proceed through the pretrial processes with an invalid claim that increases the costs of the case does nothing but waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants, squander scarce judicial resources, and damage the integrity and the public's perception of the judicial system.

Id. at 1368.  Such a result can be prevented through the use of a temporary stay, such as the one USAA is requesting herein.  As explained by the Eleventh Circuit, the burdens imposed by continuing with the case, such as engaging in discovery, include the following:

> the time spent searching for and compiling relevant documents; the time, expense, and aggravation of preparing for and attending depositions; the costs of copying and shipping documents; and the attorneys' fees generated in interpreting discovery requests, drafting responses to interrogatories, and coordinating responses to production requests, advising the client as to which documents should be disclosed and which ones withheld, and determining whether certain information is privileged.  The party seeking discovery also bears costs, including attorneys' fees generated in drafting discovery requests and reviewing the opponent's objections and responses.  Finally, discovery imposes burdens on the judicial system; scarce judicial resources must be diverted from other cases to resolve discovery disputes.

Id. at 1367-1368.

USAA submits the relevant case law clearly establishes a temporary stay of this case pending the parties' receipt of Brighthouse/Spectrum/Charter's response to the Subpoena is proper and appropriate, because a dispositive issue exists which will likely

resolve the case without expensive and time-consuming litigation and discovery concerning the merits of the pending claim. See Chudasma v. Mazda Motor Corp., 123 F.3d 1353 (11th Cir. 1997)(trial court did not abuse its discretion in suspending case pending rulings on motions facially attacking complaint); Patterson v. U.S. Postal Service, 901 F.2d 927, 929 (11th Cir. 1990)(affirming district court order staying case pending outcome of defendant's dispositive motions); Anderson v. Bullard, 2018 WL 5920476, *1 (M.D. Fla. Nov. 13, 2018)(granting defendant's motion to stay pending court's ruling on defendant's motion to dismiss for lack of personal jurisdiction, where motion to dismiss presented a "nonfrivolous challenge" to the court's jurisdiction and where "the resulting harm is minimal when compared to the benefits of saved time, money, and resources in the event the court determines it lacks personal jurisdiction . . ."); Belloso v. Asplundh Tree Expert Co., 2018 WL 4407088, *2 (M.D. Fla. Sept. 17, 2018)(granting Defendants' motion to stay for thirty days because Defendants had filed motion to dismiss for lack of subject matter jurisdiction which was pending and which had merit and was "potentially case dispositive"); Cavalieri v. Avior Airlines, C.A., 2018 WL 4193691, *1 (S.D. Fla. May, 18, 2018)(granting defendant's motion to stay pending resolution of motion to dismiss for lack of subject matter jurisdiction (i.e., lack of diversity) and until court could determine whether the case was properly before it); Scoma Chiropractic, P.A. v. Jackson Hewitt, Inc., 2017 WL 52566861, *2 (M.D. Fla. Nov. 13, 2017)(granting defendant's motion to stay pending determination on defendant's motion to dismiss second amended class action complaint after taking a "preliminary peek" at the motion to dismiss, finding the challenges meritorious, and delaying

discovery pending a ruling would cause plaintiff little harm and promote judicial efficiency); Verrier v. Perrino, 2016 WL 3655295, *1-*2 (M.D. Fla. July 8, 2016)(staying case for 30 days pending resolution of motion to dismiss); Latell v. Triano, 2014 WL 12616971, *2 (M.D. Fla. Oct. 16, 2014)(staying case for forty-five (45) days because there were pending motions challenging personal jurisdiction and the legal sufficiency of the amended complaint); Yerk v. People for the Ethical Treatment of Animals, 2010 WL 1730754, *2 (M.D. Fla. April 28, 2010)(holding there was good cause to grant a stay of a case pending ruling on dispositive motion); McCabe v. Foley, 233 F.R.D. 683, 685 (M.D. Fla. 2006)(granting temporary stay after finding defendant had raised meritorious challenge to the legal sufficiency of the complaint).

USAA respectfully submits the specific evidence cited herein unequivocally demonstrates good cause for the requested stay.  Plaintiffs' claim involves arson and insurance fraud and, thus, should be dismissed entirely. Because Plaintiffs' counsel has refused to dismiss the action, USAA issued a Subpoena on February 4, 2021 to Brighthouse/Spectrum/Charter asking for the identity of the Irvings' IP address on their WiFi on the date of the fire. USAA's counsel has requested Plaintiffs' counsel to stay this matter until this information is received, but Plaintiffs' counsel has refused to do so.

A temporary stay of this matter until the response to the Brighthouse/Spectrum/Charter Subpoena is received is appropriate here as USAA believes the evidence cited herein, along with the information it expects to receive from Brighthouse/Spectrum/Charter, will likely lead to the dismissal of this entire action based on Plaintiffs' fabrication of evidence and fraud. Unnecessary costs to both parties and to

the Court can be avoided if the proceedings are temporarily delayed. Plaintiffs will suffer no prejudice as a result of a temporary stay, as the discovery cut off date is not until December 6, 2021.

## **CONCLUSION**

USAA respectfully submits a review of the evidence set forth herein clearly reveals Plaintiffs' fabrication of evidence and the resulting "fraud on the court," which must be addressed and resolved before the parties and the Court become further involved in the merits of Plaintiffs' coverage claim.   Granting a temporary stay until this dispositive issue has been resolved is a proper exercise of the Court's responsibility to manage a case "in order to avoid a massive waste of judicial and private resources and a loss of society's confidence in the court's ability to administer justice." Belloso, 2018 WL 4407088 at *2.

Based on the foregoing, Defendant USAA GENERAL INDEMNITY COMPANY respectfully moves this Court to enter an Order temporarily staying the proceedings of this case until the parties receive Brighthouse/Spectrum/Charter's response to the Subpoena issued by USAA on February 4, 2021 and the issue of Plaintiffs' fabrication of evidence and resulting fraud on the Court can be finally resolved.

## **LOCAL RULE 3.01(g) CERTICATION**

Counsel for USAA certifies he has had multiple email communications with Plaintiffs' counsel and a telephone call on February 5, 2021 with Plaintiffs' counsel in a good faith effort to resolve this Motion, but the parties were unable to reach an agreement.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 8, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  David J. Pettinato, Esq., Law Offices of David Pettinato, LLC, 1000 West Cass Street, Tampa, FL 33606 (dpettinato@pettinatolaw.com; admin@pettinatolaw.com).

  s/Chris Ballentine
CHRIS BALLENTINE, ESQ.
Florida Bar No. 434205
JOSEPH L. AMOS, JR., ESQ.
Florida Bar No. 856230
Fisher Rushmer, P.A.
Post Office Box 3753
Orlando, FL  32802-3753
Tel:  407-843-2111 / Fax:  407-422-1080
Primary E-Mail:  cballentine@fisherlawfirm.com
Secondary E-Mail:  dburns@fisherlawfirm.com
Primary E-Mail:  jamos@fisherlawfirm.com
Secondary E-Mail:  askees@fisherlawfirm.com
ATTORNEYS FOR DEFENDANT

L:\CMB\Irving\PLEADING\M for Stay of Proceedings.docx